## MILAM COUNTY MUT. LIFE & ACCIDENT ASS'N v. PARKER.

### No. 7542.

Court of Civil Appeals of Texas. Austin.

Nov. 19, 1930.

E. A. Wallace, of Cameron, for appellant.

E. A. Camp, of Rockdale, and S. L. Staples, of Austin, for appellee.

McCLENDON, C. J.

Appeal from a judgment in favor of plaintiff (appellee here) in an action upon an insurance policy issued by defendant (appellant here) an unincorporated mutual assessment association, upon the life of Blackstone Parker, husband of plaintiff. The defense was that the policy never became effective because its delivery to the insured was conditional upon his acceptance thereof and payment of the requisite membership fee, which condition was never complied with. In addition to contesting such nonpayment, plaintiff pleaded waiver, estoppel, and extension of credit to the insured. However, in the trial plaintiff relied upon the claim that the membership fee had been paid as shown by defendant's receipt attached to the policy. The case was tried to the court without a jury, and the sole question presented by the appeal is whether the evidence will support a finding that the membership fee was paid. The pertinent facts follow:

Defendant's home office was at Rockdale, Tex. The president died in December, 1929, prior to the filing of this suit. Insured, who lived at Smithville, had been married twice. By his first marriage he had two children, who lived with their mother at Waelder, Tex., who had been divorced from their father. On or shortly prior to May 23, 1929, the president, who was then engaged in soliciting insurance for defendant, was at Smithville, and took the application of the insured for three policies, two on his own life, and one on the life of his wife. One of the policies on insured's life was a Class A policy in favor of his then wife, and the other a Class B policy in favor of his two minor children. The former is the policy here in suit and the latter is in suit in a companion case, No. 7543, this day decided, 34 S.W.(2d) 424. May 29, 1929, the three policies were issued. Attached to each was a carbon copy of the application, and a blank form of receipt for the membership fee. The receipt form attached to the policy in suit was filled in in the handwriting of and signed by the president and acknowledged payment of $10, which covered the membership fee of all three policies. This receipt bore date May 23, 1929. Insured died July 8, 1929. In the meantime, on June 29, 1929, defendant addressed to the insured at Smithville a notice upon a printed form of

424

assessment No. 11 of $1.10 on Class B policies, by reason of the death of one Sam B. Lewis. July 6, 1929, insured mailed check to defendant for this $1.10. On July 15, 1929, defendant's secretary wrote to plaintiff in the name of defendant:

"We are returning to you herewith your check for $1.10 on the First State Bank, which we suppose is to cover call of June 14, 1929. Your policies had lapsed in class A before receipt of this check, hence we cannot accept this check."

July 15, 1929, defendant's secretary wrote J. E. Davis, at Waelder, in reply to a telegram, as follows:

"In answer to your wire of the 11th you are advised that Blackstone Parker's policy in class A had lapsed for non-payment of assessment number 30, called June 14th, 1929. His policy in Class B was in good standing, subject to assessment number 11.

"The beneficiary should make the usual proof of loss and mail to us in accordance with policy in class B."

On July 17, 1929, defendant's secretary sent proofs of death on the Class B policy, with instructions as to how they were to be executed and returned, adding:

"This proof must be answered correctly and fully before any steps can be taken by the association toward adjusting the claim."

Proofs of loss were furnished in accordance with this letter. Later plaintiff mailed to defendant a draft for $10 to cover "initiation fees," which draft was promptly returned.

The company's secretary testified that the membership fees were not paid; that the policies were sent out with a letter (copy of which he did not retain), advising that they were on approval and would become effective if accepted and the membership fee paid; that the books of defendant showed that the policies were only issued conditionally; and that the notice of assessment and several letters advising that the Class B policy was in force subject to assessment No. 11, and the Class A policy had lapsed for nonpayment of assessment of June 14th, were mistakes on his part. However, the books were not offered in evidence; and when confronted with the receipt for the membership fee he testified that it was in the president's handwriting, that the application was taken by the president in person at Smithville, and that he had no personal knowledge of what transpired between the president and insured at the time the application was taken.

Delivery of the policy to the insured was prima facie evidence of its effective execution; and delivery of the receipt, unless shown to be by mistake, was explainable on only one of two theories, namely, that the fees were in fact paid, or some satisfactory arrangement regarding them was made between the president and the insured. The evidence conclusively shows that during the life of the insured and until after proofs of death had been furnished at defendant's instance, the latter treated all the policies as having been duly executed, the Class A as having lapsed for nonpayment of an assessment (which in fact was not chargeable against insured because the death upon which it was made had occurred several months before the application), and the Class B policy as being still in force and a valid claim against defendant, subject to assessment No. 11. The testimony of defendant's secretary, at most, raised a fact issue which the trial court's judgment foreclosed. The fact that after the case was placed in the hands of attorneys the plaintiff tendered the amount of the membership fees did not establish as a matter of law that the fees had not been paid.

The trial court's judgment is affirmed.

Affirmed.